# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO
### EASTERN DIVISION

| | | |
|---|---|---|
| PHILIP VINCENT RIPEPI, *et al.*, | ) | CASE NO.:    5:20-cv-01896 |
| | ) | |
| Plaintiffs, | ) | |
| | ) | JUDGE JOHN R. ADAMS |
| v. | ) | |
| | ) | |
| USA TAEKWONDO, INC., *et al.*, | ) | **MEMORANDUM OF OPINION AND** |
| | ) | **ORDER** |
| Defendants. | ) | (Resolves Doc. 17) |

Currently pending before this Court is USA Taekwondo, Inc.'s ("USAT"), Gareth Brown's ("Brown"), and Paul Green's ("Green") (collectively, "Defendants") motion to dismiss Philip Vincent Ripepi's ("Ripepi"), Ryan Andrachik's ("Ryan"), and Karen Andrachik's ("Karen") (collectively, "Plaintiffs") complaint for lack of personal jurisdiction and for failure to state a claim upon which relief may be granted, pursuant to Federal Rules of Civil Procedure 12(b)(2) and 12(b)(6), respectively. (Mot. to Dismiss 1, ECF No. 17.) Plaintiffs opposed Defendants' motion, to which Defendants filed a reply in support of their original motion. (Opp'n to Mot. to Dismiss, ECF No. 25; Reply in Supp. of Mot. to Dismiss, ECF No. 30.)

For the reasons explained herein, this Court finds that it does possess personal jurisdiction over Defendants. Defendants' motion to dismiss Plaintiffs' complaint for lack of personal jurisdiction, pursuant to Federal Rule of Civil Procedure 12(b)(2) is, therefore, denied. Additionally, with respect to Plaintiffs' legal claims, Plaintiffs' complaint failed to state claims for which relief may be granted, pursuant to Federal Rule of Civil Procedure 12(b)(6) and associated federal law, as to Count II, negligent hiring, retention, and supervision, Count III, reckless and intentional infliction of emotional distress, and Count V, "federal rule of evidence 404(b)." On the other hand, Plaintiffs' complaint properly pled claims for which relief may be granted, pursuant to Federal Rule of Civil

Procedure 12(b)(6) and associated federal law, as to Count I, negligence, Count IV, gross negligence, recklessness, willful and wanton conduct, and Count VI, loss of consortium. Accordingly, the claims proceeding in this Court are as follows: (1) Plaintiffs' collective claim of negligence as to each Defendant jointly and severally; (2) Plaintiffs' collective claim of gross negligence, recklessness, willful and wanton conduct as to each Defendant jointly and severally; and (3) Ryan's and Karen's individual claims of loss of consortium as to each Defendant jointly and severally. Finally, Defendants did not move to dismiss Count VII of Plaintiffs' complaint asserting USAT is vicariously liable "for the tortious conduct of all other Defendants." As such, this claim will also proceed before this Court.

Given this holding, Defendants' pending motion to dismiss is hereby GRANTED IN PART AND DENIED IN PART. A thorough discussion of this Court's reasoning follows.

## I.  STATEMENT OF FACTS

This action arises out of a head injury Ripepi allegedly suffered in August 2018, during a USAT training camp held in England ("UK Camp"). (Compl. ¶¶ 13-17, ECF No. 1.) Ripepi alleges that in June 2018, Brown and Green, USAT coaches, observed Ripepi perform at a Taekwondo training camp in Hudson, Ohio, and thereafter invited Ripepi to be one of eleven participants in the UK Camp. (*Id.* at ¶¶ 5-6, 14.) According to Ripepi, the UK Camp was set to begin August 27, 2018, and, because USAT is the national governing body for the United States Olympic Committee for the sport of Taekwondo, was programmed to include "training and drills aimed at conditioning the participants at an Olympic level." (*Id.* at ¶¶ 3, 15.)

Ripepi claims that on August 28, 2018, the second day of the UK Camp, Brown and Green paired Ripepi with an athlete outside of his weight class to perform a no head contact drill which was familiar to both Ripepi and the other athlete "as it is a basic, no head contact technique in

Taekwondo which is frequently practiced." (*Id.* at ¶ 16.) Ripepi alleges that "[v]irtually immediately" the athlete he was paired with for the drill attacked him with a kick to the back of the head, knocking him to the ground where he stayed for multiple minutes and experienced dizziness. (*Id.* at ¶ 17.) Ripepi claims that, despite being surrounded by coaches and athletes at the time he was allegedly kicked, no one came to his assistance and, further, that "USAT failed to provide any medical staff" during the "intense" UK Camp practices. (*Id.* at ¶¶ 18-19.) Ripepi further claims that, despite being kicked in the head, Defendants "pressured" him to continue participating in the UK Camp, and he did, in fact, continue to participate for the remainder of August 28, 2018. (*Id.* at ¶ 19.) However, Ripepi claims that evening he "realized he was experiencing severe concussive symptoms" including nausea and vomiting. (*Id.*)

Ripepi alleges that despite experiencing "a sleepless night" during which he was "in excruciating pain" he waited until the next morning, August 29, 2018, to seek medical attention at the UK Camp training facility. (*Id.* at ¶ 20.) According to Ripepi, on August 29, 2018, despite USAT personnel confirming his symptoms were consistent with those of a concussion, he "was neither offered, nor provided, any medical assistance" and instead claims his symptoms were dismissed and he was actively discouraged from going to a hospital. (*Id.*) Ripepi alleges he then opted to sit on the sidelines while the other athletes participated in the UK Camp activities, during which time he began experiencing headaches, a ringing in his ears, light sensitivity, sound sensitivity, and double vision. (*Id.*) Ripepi claims Defendants then told him a UK Camp participant's mother, who is a surgeon, would evaluate him that day. (*Id.* at ¶ 21.) Ripepi claims, however, that he was not evaluated on August 29, 2018, and instead experienced "another sleepless and painful night." (*Id.*)

On August 30, 2018, Ripepi alleges Defendants pressured him to assist with that day's activities by operating computers while waiting for the surgeon to arrive and evaluate him, which Ripepi agreed to do. (*Id.* at ¶ 22.) Ripepi claims that his symptoms worsened yet again, and the surgeon failed to evaluate him during the training session. (*Id.*) According to Ripepi, USAT coaches informed him the surgeon would come to his hotel room that evening to evaluate him. (*Id.*) Ripepi claims that he felt "uneasy," feared he would not wake up the next morning, and feared for his life, so he opted to return to Ohio. (*Id.* at ¶ 23.)

Throughout the complaint, Ripepi alleges that, prior to the UK Camp, he had years of extensive Taekwondo training, was an Olympic hopeful in Taekwondo, and that the actions of USAT, Brown, and Green during the UK Camp, particularly in response to the head injury he allegedly suffered, destroyed his career, "life-long ambitions," and health. (*Id.* at ¶¶ 12-13, 15, 18-19, 24-25.) Accordingly, Plaintiffs collectively bring the following claims against Defendants, jointly and severally: (1) negligence; (2) negligent hiring, retention, and supervision; (3) reckless and intentional infliction of emotional distress; (4) gross negligence, recklessness, willful and wanton conduct; and (5) "federal rule of evidence 404(b)." (*Id.* at ¶¶ 26-51.) Ryan and Karen also bring a claim of loss of consortium against Defendants, jointly and severally. (*Id.* at ¶¶ 52-55.) Finally, Plaintiffs collectively bring a claim of vicarious liability against USAT. (*Id.* at ¶¶ 56-58.)

In response to the above enumerated allegations and associated legal claims, Defendants ask this Court to dismiss Plaintiffs' complaint for lack of personal jurisdiction and for failure to state claims upon which relief may be granted, pursuant to Federal Rules of Civil Procedure 12(b)(2) and 12(b)(6), respectively. (Mot. to Dismiss 1, ECF No. 17.) Each basis for the request to dismiss will be evaluated individually.

## II.   PERSONAL JURISDICTION

### A. Standard of Review

Regarding the pending motion to dismiss Plaintiffs' claims for lack of personal jurisdiction, "[t]he procedural scheme which guides the district court in disposing of Rule 12(b)(2) motions is well-settled." *Theunissen v. Matthews*, 935 F.2d 1454, 1458 (6th Cir. 1991) (citing *Serras v. First Tenn. Bank Nat'l Ass'n*, 875 F.2d 1212, 1214 (6th Cir. 1989)). It is Plaintiffs' burden to establish that this Court possesses personal jurisdiction over Defendants. *Theunissen*, 935 F.2d at 1458 (citing *McNutt v. Gen. Motors Acceptance Corp.*, 298 U.S. 178, 189 (1936)). In other words, Plaintiffs are required to "set forth specific facts showing that the court has jurisdiction." *Theunissen*, 935 F.2d at 1458 (citing *Weller v. Cromwell Oil Co.*, 504 F.2d 927, 930 (6th Cir. 1974)).

Where, as with the instant matter, a court rules on a motion to dismiss for lack of personal jurisdiction by analyzing only the pleadings, motions, and affidavits before it, without the parties engaging in discovery or the court conducting an evidentiary hearing, "the court must consider the pleadings and affidavits in a light most favorable to the plaintiff . . .." *CompuServe, Inc. v. Patterson*, 89 F.3d 1257, 1262 (6th Cir. 1996) (citing *Theunissen*, 935 F.2d at 1458-59). In such consideration, Plaintiffs' burden is "relatively slight," requiring that Plaintiffs "make only a prima facie showing that personal jurisdiction exists in order to defeat dismissal." *Speedeon Data, LLC v. Integrated Direct Mktg., LLC*, 718 F. App'x 333, 336 (6th Cir. 2017) (quoting *Air Prods. & Controls, Inc. v. Safetech Int'l, Inc.*, 503 F.3d 544, 549 (6th Cir. 2007) (internal quotation marks omitted)). A prima facie showing that personal jurisdiction exists is made by "establishing with reasonable particularity sufficient contacts between [Defendants] and the forum state to support jurisdiction." *Neogen Corp. v. Neo Gen Screening, Inc.*, 282 F.3d 883, 887 (6th Cir. 2002) (quoting *Provident Nat'l Bank v. Cal. Fed. Savings Loan Ass'n*, 819 F.2d 434, 437 (3d Cir. 1987) (internal

quotation marks omitted)). In sum, dismissal under Federal Rule of Civil Procedure 12(b)(2) in a case such as this is "only proper if all of the specific facts [Plaintiffs] allege[] collectively fail[] to state a prima facie case for jurisdiction under the appropriate standards." *Theunissen*, 935 F.2d at 1459.

### B.  Analysis

In cases where subject matter jurisdiction is predicated on diversity, such as the instant matter, this Court may only validly exercise personal jurisdiction over out-of-state defendants when both the forum state's long-arm statute and constitutional due process requirements are met. *Calphalon Corp. v. Rowlette*, 228 F.3d 718, 721 (6th Cir. 2000). *See also Bird v. Parsons*, 289 F.3d 865, 871 (6th Cir. 2002) (explaining that personal jurisdiction is properly exercised "if the defendant is amenable to service of process under the [forum] state's long-arm statute and if the exercise of personal jurisdiction would not deny the defendant[] due process") (quoting *Mich. Coal. of Radioactive Material Users, Inc. v. Griepentrog*, 954 F.2d 1174, 1176 (6th Cir. 1992) (internal quotation marks and citations omitted)). With respect to Ohio's long-arm statute, it is important to note that "the Ohio Supreme Court has ruled that the Ohio long-arm statute does not extend to the constitutional limits of the Due Process Clause . . .." *Calphalon*, 228 F.3d at 721. *See also Goldstein v. Christiansen*, 70 Ohio St.3d 232, 238, 638 N.E.2d 541 (1994), fn. 1. Accordingly, the requirements of Ohio's long-arm statute to reach out-of-state defendants are narrower than constitutional due process requirements. For this reason, in determining whether personal jurisdiction exists over the out-of-state Defendants, this Court will first look to the law of the forum state. In other words, this Court will first determine whether Ohio's long-arm statute allows for the Defendants to be haled to this Court and will second analyze constitutional due process requirements, which focus on whether Defendants have sufficient minimum contacts with Ohio

such that "the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Int'l Shoe Co. v. Wash.*, 326 U.S. 310, 316 (1945) (quoting *Milliken v. Meyer*, 311 U.S. 457, 463 (1940)).

> 1.  *Ohio's Long-Arm Statute*

At the time this action was filed, Ohio's long-arm statute read:

> (A) A court may exercise personal jurisdiction over a person who acts directly or by an agent, as to a cause of action arising from the person's:
>
> (1) Transacting any business in this state;
>
> (2) Contracting to supply services or goods in this state;
>
> (3) Causing tortious injury by an act or omission in this state;
>
> (4) Causing tortious injury in this state by an act or omission outside this state if he regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered in this state;
>
> (5) Causing injury in this state to any person by breach of warranty expressly or impliedly made in the sale of goods outside this state when he might reasonably have expected such person to use, consume, or be affected by the goods in this state, provided that he also regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered in this state;
>
> (6) Causing tortious injury in this state to any person by an act outside this state committed with the purpose of injuring persons, when he might reasonably have expected that some person would be injured thereby in this state;
>
> (7) Causing tortious injury to any person by a criminal act, any element of which takes place in this state, which he commits or in the commission of which he is guilty of complicity;
>
> (8) Having an interest in, using, or possessing real property in this state;
>
> (9) Contracting to insure any person, property, or risk located within this state at the time of contracting.

R.C. 2307.382(A)(1)-(9) (1988).

Defendants argue that Ohio's long-arm statute does not allow this Court to reach them because, pursuant to R.C. 2307.382(A)(3), (4), or (6), any "act or omission" and associated "tortious injury" at issue, namely the alleged kick to Ripepi's head and subsequent lack of medical care, occurred

in England during the UK Camp, not Ohio, thereby denying this Court of jurisdiction over Defendants. (Mot. to Dismiss 22-23, ECF No. 17.) Plaintiffs, on the other hand, argue that R.C. 2307.382(A)(1), (2), (3), and (4) all allow this Court to reach Defendants and exercise personal jurisdiction over them, particularly because Defendants transacted business in Ohio when they recruited Ripepi to participate in the UK Camp while conducting a Taekwondo seminar in Ohio. (Opp'n to Mot. to Dismiss 22-26, ECF No. 25.)

Looking first to R.C. 2307.382(A)(1), the Supreme Court of Ohio concluded "the broad wording of the statute permits jurisdiction over non-resident defendants who are transacting any business in Ohio." *Kroger Co. v. Malease Foods Corp.*, 437 F.3d 506, 511 (6th Cir. 2006) (discussing *Ky. Oaks Mall v. Mitchell's Formal Wear*, 53 Ohio St.3d 73, 559 N.E.2d 477 (1990)). The Supreme Court of Ohio further explained that to transact business in Ohio

> means to prosecute negotiations; to carry on business; to have dealings . . .. The word embraces in its meaning the carrying on or prosecution of business negotiations but it is a broader term than the word "contract" and may involve business negotiations which have been either wholly or partly brought to a conclusion . . ..

*Ky. Oaks Mall*, 53 Ohio St.3d at 75, 559 N.E.2d 477.

The parties agree that in June 2018, Brown and Green, USAT coaches, conducted a Taekwondo seminar in Ohio, for which they were paid. (Compl. ¶¶ 5-6, 14, ECF No. 1; Brown Aff. ¶¶ 2, 4, 6, 8, ECF No. 17-1; Spence Aff. ¶¶ 8-9, 11, ECF No. 17-2; Ryan Aff. ¶¶ 9-10, ECF No. 25-1.) Ripepi claims that because of his performance at this Ohio seminar, Defendants invited him to participate in the UK Camp. (Compl. ¶ 14, ECF No. 1.) Defendants generally admit that the arrangements for Ripepi's participation at the UK Camp were negotiated in Ohio. (Brown Aff. ¶ 13, ECF No. 17-1; Spence Aff. ¶ 17, ECF No. 17-2. *See also* Ryan Aff. ¶ 11, ECF No. 25-1.)

Plaintiffs claim Defendants engaged in a string of negligent acts, the first of which was failing to properly inform Plaintiffs of the "true nature" of the UK Camp, which necessarily occurred either when Defendants initially extended an invitation to Ripepi in Ohio to participate in the UK Camp or when Defendants negotiated with Ripepi and Ryan in Ohio regarding Ripepi's participation at the UK Camp. (*See* Compl. ¶¶ 18, 28, ECF No. 1.) Review of the pleadings, affidavits, and submissions of the parties through the lens most favorable to Plaintiffs demonstrate Defendants' string of negligence arose from business transacted in Ohio – business which took the form of an invitation extended to Ripepi in Ohio for participation in the UK Camp, notably extended while Brown and Green were also present in Ohio, as well as negotiations which subsequently occurred in Ohio regarding Ripepi's participation in the UK Camp. Accordingly, this Court finds that it may exercise personal jurisdiction over Defendants under R.C. 2307.382(A)(1) of Ohio's long-arm statute. Because Defendants are subject to personal jurisdiction in this Court pursuant to R.C. 2307.382(A)(1) of Ohio's long-arm statute, this Court will not analyze the application of any additional sections of Ohio's long-arm statute to this matter.

2. *Constitutional Due Process*

Turning then to the constitutional due process analysis, this Court will reiterate that constitutional due process focuses on whether Defendants have sufficient "minimum contacts with [the forum state] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Int'l Shoe Co. v. Wash.*, 326 U.S. 310, 316 (1945) (quoting *Milliken v. Meyer*, 311 U.S. 457, 463 (1940)). The critical question is whether "the defendant's conduct and connection with the forum State are such that he should reasonably anticipate being haled into court there." *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980). Pursuant to these considerations, personal jurisdiction over Defendants may be either specific or general,

"depending upon the nature of the contacts that the defendant has with the forum state." *Bird v. Parsons*, 289 F.3d 865, 873 (6th Cir. 2002) (citing *Conti v. Pneumatic Prods. Corp.*, 977 F.2d 978, 981 (6th Cir. 1992)).

Specific jurisdiction allows a state to exercise "personal jurisdiction over a defendant in a suit arising out of or related to the defendant's contacts with the forum." *Helicopteros Nacionales de Colombia v. Hall*, 466 U.S. 408, 414 n.8 (1984). In essence, the standard used to determine whether a defendant should reasonably anticipate out-of-state litigation is the following:

> The unilateral activity of those who claim some relationship with a nonresident defendant cannot satisfy the requirement of contact with the forum State. The application of that rule will vary with the quality and nature of the defendant's activity, but it is essential in each case that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws.

*Hanson v. Denckla*, 357 U.S. 235, 253 (1958) (citing *Int'l Shoe Co. v. Wash.*, 326 U.S. 310, 319 (1945)). The Sixth Circuit has set forth a three-part test to determine the outer limits of personal jurisdiction arising out of Defendants' contacts with Ohio:

> First, the defendant must purposefully avail himself of the privilege of acting in the forum state or causing a consequence in the forum state. Second, the cause of action must arise from the defendant's activities there. Finally, the acts of the defendant or consequences caused by the defendant must have a substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable.

*S. Mach. Co. v. Mohasco Indus.,* 401 F.2d 374, 381 (6th Cir. 1968).

      a)  *Southern Machine* Test Prong One: Purposeful Availment

Purposeful availment occurs when a defendant's contacts with the forum state "proximately result from actions by the defendant *himself* that create a 'substantial connection' with the forum State." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985) (quoting *McGee v. Int'l Life Ins. Co.*, 355 U.S. 220, 223 (1957)) (*emphasis* in original). Although physical presence in the

forum state is not required to find purposeful availment, actions by Defendants that are purposefully directed towards individuals in the forum state are required. *CompuServe*, 89 F.3d at 1264 (citing *Burger King Corp.*, 471 U.S. at 476). To be clear, it is not the mere existence of contacts between Defendants and the forum state that is important, but rather the quality of those contacts. *Burnshire Dev., LLC v. Cliffs Reduced Iron Corp.*, 198 F. App'x 425, 431 (citing *Calphalon*, 228 F.3d at 722). The "'purposeful availment' requirement ensures that a defendant will not be haled into a jurisdiction solely as a result of 'random,' 'fortuitous,' or 'attenuated' contacts, . . . or of the 'unilateral activity of another party or a third person . . ..'" *Burger King Corp.*, 471 U.S. at 475 (quoting *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 774 (1984); *World-Wide Volkswagen Corp.*, 444 U.S. at 299; *Helicopteros Nacionales de Colombia*, 466 U.S. at 417).

As previously noted, "the Ohio Supreme Court has ruled that the Ohio long-arm statute does not extend to the constitutional limits of the Due Process Clause . . . ." *Calphalon*, 228 F.3d at 721. *See also Goldstein v. Christiansen*, 70 Ohio St.3d 232, 238, 638 N.E.2d 541 (1994), fn. 1. However, the Sixth Circuit Court of Appeals has explained that despite differences between Ohio's long-arm statute and the constitutional due process requirements for personal jurisdiction, Ohio's "'transacting any business' standard is coextensive with the Due Process Clause in that it requires both that the defendant have purposefully availed itself of the privilege of acting in Ohio or have caused a consequence in Ohio and that the act or consequence in Ohio be sufficiently substantial to support jurisdiction." *Burnshire*, 198 F. App'x at 430.

Having previously determined that this Court may exercise personal jurisdiction over Defendants pursuant to the "transacting any business" subsection of Ohio's long-arm statute, this Court effectively held that Defendants purposefully availed themselves of the privilege of acting

in Ohio or caused a consequence in Ohio sufficiently substantial to support jurisdiction. In other words, because Defendants extended an invitation to Ripepi in Ohio to attend the UK Camp and subsequently engaged in negotiations with Ripepi and Ryan in Ohio regarding Ripepi's participation in the UK Camp, Defendants created a substantial connection between themselves and Ohio. In truth, the business transaction Defendants directed towards Ripepi in Ohio included ongoing negotiations that contemplated future consequences. *See Burger King Corp.*, 471 U.S. at 479 (emphasizing "the need for a 'highly realistic' approach that recognizes that a 'contract' is 'ordinarily but an intermediate step serving to tie up prior business negotiations with future consequences which themselves are the real object of the business transaction.'") (quoting *Hoopeston Canning Co. v. Cullen*, 318 U.S. 313, 316-17 (1943)). The engagement between the parties was, therefore, purposeful and cannot be described as random, fortuitous, or unilateral such that Defendants could not reasonably anticipate being haled to court in Ohio due to claims arising out of these business transactions. Accordingly, the first prong of the *Southern Machine* test is met.

   b)  *Southern Machine* Test Prong Two

The second specific jurisdiction requirement is that "the cause of action must arise from the defendant's activities" in the forum state. *S. Mach. Co.*, 401 F.2d at 381. "To meet this requirement, a plaintiff must establish at least a 'causal connection' between a defendant's activities in the forum state and the harm to the plaintiff." *Opportunity Fund, LLC v. Epitome Sys.*, 912 F. Supp. 2d 531, 540 (S.D. Ohio 2012) (quoting *Neogen*, 282 F.3d at 892). "If a defendant's contacts with the forum state are related to the operative facts of a controversy, then an action will be deemed to have arisen from those contacts." *CompuServe*, 89 F.3d at 1267 (citing *Reynolds v. Int'l Amateur Athletic Fed'n*, 23 F.3d 1110, 1119 (6th Cir. 1974)).

Although Defendants focus their personal jurisdiction arguments on the kick to the head Ripepi allegedly suffered at the UK Camp in England, and the subsequent lack of medical care which also occurred in England, Plaintiffs have clearly pled that Defendants' negligent acts began in Ohio while the parties were negotiating Ripepi's attendance at the UK Camp. In other words, Plaintiffs have established a causal connection between the activities that occurred in Ohio to the physical harm Ripepi allegedly suffered in England, if for no other reason than Plaintiffs claim the initial harm was suffered in Ohio when Defendants failed to fully inform them during negotiations of the "true nature" of the UK Camp and the resources available to Ripepi during the UK Camp. In essence, Plaintiffs tie the operative facts of this matter to Defendants' initial and substantial contacts with Ohio, which is enough to establish that the cause of action arose from Defendants' contacts with Ohio. The second prong of the *Southern Machine* test is met.

c) *Southern Machine* Test Prong Three

The third and final prong of the specific jurisdiction analysis requires that "the acts of the defendant or consequences caused by the defendant must have a substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable." *S. Mach. Co.*, 401 F.2d at 381. With respect to this prong, when a court finds that the first two prongs of the constitutional due process analysis are met, "an inference arises that this third factor is also present." *CompuServe*, 89 F.3d at 1268 (citing *Am. Greetings Corp. v. Cohn*, 839 F.2d 1164, 1170 (6th Cir. 1988)). When engaging in analysis for this final factor, this Court must consider "the burden on the defendant, the interest of the forum state, the plaintiff's interest in obtaining relief, and the interest of other states in securing the most efficient resolution of controversies." *Am. Greetings Corp.*, 839 F.2d at 1169-70.

Because Brown and Green are residents of England and USAT is headquartered and has its physical location in Colorado, this Court recognizes the burden that defending this case in this Court will cause Defendants. (*See* Brown Aff. ¶ 4, ECF No. 17-1; Spence Aff. ¶ 5, ECF No. 17-2.) This Court is must also consider that although Plaintiffs argue, and this Court agrees, Defendants' negligent conduct initially occurred in Ohio when Defendants failed to properly inform Plaintiffs of specific details with respect to the UK Camp, the bulk of the tortious conduct alleged – the alleged kick to the head, failure to treat, failure to supervise, etc. – occurred in England, not Ohio. Regardless, Defendants knew when they negotiated with Ripepi and Ryan for Ripepi to attend the UK Camp that they were creating a connection with Ohio, even if some of the consequences of that connection occurred in England. In addition, Ohio has a strong interest in obtaining relief for its citizens, and any resolution of this matter in Ohio would meet the interests of other states in efficiently handling this controversy. Accordingly, weighing these considerations, the third *Southern Machine* prong is met.

Therefore, by way of summary, this Court finds that Defendants have sufficient minimum contacts with Ohio such that they reasonably should have anticipated being haled to court here on a matter related to those contacts. This determination is made because the instant matter arises out of and is related to Defendants' own purposeful activity which both occurred in Ohio and was directed to Ohio. This purposeful activity created a substantial, quality connection between Defendants and Ohio during which Defendants enjoyed the privilege of conducting activities in Ohio such that exercising specific jurisdiction over Defendants is reasonable. Because this Court has found the requirements of Ohio's long-arm statute and constitutional due process are met, Plaintiffs have met their burden of establishing that this Court possesses personal jurisdiction over Defendants. It is for all these reasons, as analyzed in detail above, that this Court finds it may

exercise personal jurisdiction over Defendants. Defendants' motion to dismiss Plaintiffs' complaint for lack of personal jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(2) is therefore DENIED.

As a final note, this Court previously indicated that personal jurisdiction over Defendants may be based upon specific jurisdiction or general jurisdiction. Although this Court's analysis and conclusions focused on specific jurisdiction, it is prudent to briefly discuss general jurisdiction. General jurisdiction exists where "a defendant's contacts with the forum state are of such a 'continuous and systematic' nature that the state may exercise personal jurisdiction over the defendant even if the action is unrelated to the defendant's contacts with the state." *Third Nat'l Bank v. Wedge Group Inc.*, 882 F.2d 1087, 1089 (6th Cir. 1989) (citing generally *Perkins v. Benguet Consol. Mining Co.*, 342 U.S. 437 (1952)). Boiled down, general jurisdiction exists where a defendant is essentially at home. *See Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011).

Because this Court has already determined that personal jurisdiction over Defendants is properly exercised under the specific jurisdiction requirements of constitutional due process analysis, this Court will not further analyze general jurisdiction except to say that this Court has, in other cases, previously addressed general jurisdiction through precedent from the Sixth Circuit Court of Appeals which held "Ohio law does not appear to recognize general jurisdiction over non-resident defendants, but instead requires that the court find specific jurisdiction under one of the bases of jurisdiction listed in Ohio's long-arm statute." *Conn v. Zakharov*, 667 F.3d 705, 717 (6th Cir. 2012). Although the parties in this matter put forth arguments regarding recent changes to R.C. 2307.382(C), whether these changes allow Ohio's long-arm statute to fully extend to the constitutional limits of the Due Process Clause, including the limits of general jurisdiction, and

whether these changes may retroactively apply in this matter, this Court believes this specific discussion is better suited for a later time and will not be addressed for this case. (*See* Mot. to Dismiss 19-21, ECF No. 17; Opp'n to Mot. to Dismiss 19-22, ECF No. 25.)

## III. FAILURE TO STATE A CLAIM UPON WHICH RELIEF MAY BE GRANTED

### A. Standard of Review

Pursuant to Federal Rule of Civil Procedure 12(b)(6), a party may move for the dismissal of claims when the claimant has failed to "state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). In order "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). This requirement imposes both "legal *and* factual demands." *16630 Southfield Ltd. P'ship v. Flagstar Bank, F.S.B.*, 727 F.3d 502, 503 (6th Cir. 2013) (*emphasis* in original).

First, and foremost, a complaint must provide a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). This obligation does not demand "detailed factual allegations," but it does necessitate "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555) (internal quotation marks omitted). Pleadings offering either "labels and conclusions or a formulaic recitation of the elements of a cause of action," or "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements," or even "naked assertion[s] devoid of further factual enhancement" will not suffice. *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555, 557) (internal quotation marks omitted). Although "legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Iqbal*, 556 U.S. at 679. Which is particularly necessary as courts "are not bound to accept as true a legal conclusion couched as a

factual allegation." *Id.* at 678 (quoting *Twombly*, 550 U.S. at 555) (internal quotation marks omitted). Consequently, a pleading party is required to provide a factual framework that falls somewhere between a recitation of the legal elements of a claim and "detailed factual allegations" – in other words, the pleading party is required to provide well-pleaded factual allegations.

When provided, this Court then considers the well-pleaded factual allegations, "assume[s] their veracity and then determine[s] whether they plausibly give rise to an entitlement to relief." *Iqbal*, 556 U.S. at 679. A claim is plausible when the factual content pled "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678 (citing *Twombly*, 550 U.S. at 556). Notably, plausibility and probability are not one in the same. Rather, plausibility "asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556). The determination of whether a complaint states plausible claims for relief typically "requires the reviewing court to draw on its judicial experience and common sense" unless "the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct." *Iqbal*, 556 U.S. at 679.

When analyzing the currently pending motion to dismiss pursuant to the above enumerated standard, this Court is mindful that it is required to construe the pleading subject to dismissal in the light most favorable to the non-moving party and accept all well-pleaded factual allegations contained in the pleading as true. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (citing *Twombly*, 550 U.S. 555-56). Furthermore, reasonable inferences, as opposed to unwarranted factual inferences, must be made in favor of the non-moving party. *Total Benefits Planning Agency, Inc. v. Anthem Blue Cross & Blue Shield*, 552 F.3d 430, 434 (6th Cir. 2008).

**B.  Analysis**

This Court properly has subject matter jurisdiction over the instant matter pursuant to 28 U.S.C. § 1332(a) as there is complete diversity of citizenship of the parties and the amount in controversy exceeds $75,000. (Compl. ¶ 9, ECF No. 1.) When a dispute predicated upon diversity jurisdiction is before this Court, the substantive law of the forum state must be applied, while federal procedural law is followed. *See Himmel v. Ford Motor Co.*, 342 F.3d 593, 598 (6th Cir. 2003); *Erie R.R. Co. v. Tompkins*, 304 U.S. 64 (1988). Therefore, with respect to Plaintiffs' substantive claims for relief, this Court must apply the law as pronounced by the Supreme Court of Ohio. *Croce v. New York Times Co.*, 930 F.3d 787, 792 (6th Cir. 2019) (citing *Bank of N. Y. v. Janowick*, 470 F.3d 264, 272 (6th Cir. 2006)). In the event that the Supreme Court of Ohio has not yet addressed the issues present in the instant matter, this Court "may consider the decisions of the State's courts of appeals, relevant dicta from the Ohio Supreme Court, as well as other sources such as 'restatements of law, law-review commentaries, and the rules adopted by other jurisdictions.'" *Croce*, 903 F.3d at 792 (quoting *Mazur v. Young*, 507 F.3d 1013, 1016-17 (6th Cir. 2007)).

Furthermore, generally when deciding a motion to dismiss, "[m]atters outside the pleadings are not to be considered . . .." *Hammond v. Baldwin*, 866 F.2d 172, 175 (6th Cir. 1989). However, documents attached to a motion to dismiss "are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to her claim." *Weiner v. Klais & Co.*, 108 F.3d 86, 89 (6th Cir. 1997) (quoting *Venture Assoc. v. Zenith Data Sys.*, 987 F.2d 429, 431 (7th Cir. 1993)) (internal quotation marks omitted). Therefore, for the purposes of analyzing Plaintiffs' complaint for legal sufficiency under the above enumerated 12(b)(6) standards, this Court will not consider the affidavits and additional information attached to Defendants' motion to dismiss as the complaint did not refer to either the affidavits or additional information and the existence of the

affidavits and additional information are not central to the claims before this Court, despite the fact

that the affidavits and additional information may be central to any defenses asserted in this matter.

1. *Negligence (Count I), Gross Negligence, Recklessness, Willful and Wanton Conduct (Count IV), and the Defense of Primary Assumption of the Risk*

The first claim of Plaintiffs' complaint seeks to recover damages under the theory Defendants

were negligent. (Compl. ¶¶ 26-30, ECF No. 1.) Under Ohio law, the prima facie elements of

negligence are: "(1) that the defendant owed the plaintiff a duty; (2) that the defendant breached

that duty, and (3) that the breach of the duty proximately caused the plaintiff's injury." *Chambers

v. St. Mary's Sch.*, 82 Ohio St.3d 563, 565, 697 N.E.2d 198 (1998). Plaintiffs assert that Defendants

owed Plaintiffs the duty of reasonable care before, during, and after Ripepi was allegedly injured

in England. (Compl. ¶ 27, ECF No. 1.) Plaintiffs allege Defendants breached the duty of reasonable

care when they:

> (1) failed "to inform Plaintiffs of the true nature" of the UK Camp, "its participants, and its absence of reasonable and appropriate supervision, coaching, staffing, and medical resources;"
>
> (2) failed "to provide reasonable coaching, supervision, training, and medical resources" at the UK Camp;
>
> (3) failed "to appropriately prevent, respond to, investigate, manage, and treat" Ripepi after he suffered the alleged kick to the head;
>
> (4) misled "Ripepi as to his need for hospital-based medical care and their plan and intent to provide medical examination;"
>
> (5) failed "to comport with applicable rules, regulations, ordinances, and statutes, including, but not limited to, the *U.S. Center for SafeSport Code for the U.S. Olympic and Paralympic Movement*;"
>
> (6) pressured and permitted Ripepi to return to the UK Camp "activities prematurely following a serious traumatic brain injury and without clearance from a medical professional;" and
>
> (7) failed to report Ripepi's alleged injury "to the necessary parties" and failed "to self-report their own violation of applicable rules, regulations, ordinances, and statutes, including, but not limited to, the *U.S. Center for SafeSport Code for the U.S. Olympic and Paralympic Movement*."

(*Id.* at ¶ 28.) According to Plaintiffs, each of the above enumerated breaches of the duty of reasonable care proximately caused Plaintiffs damages. (*Id.* at ¶ 29.) In response to these allegations, Defendants argue they owed Plaintiffs no duty under the affirmative defense of primary assumption of the risk and, therefore, Plaintiffs' negligence claim should be dismissed entirely. (Mot. to Dismiss 8-11, ECF No. 17.)

Primary assumption of the risk is an extraordinary defense to a negligence claim as it asserts that "a plaintiff who primarily assumes the risk of a particular action is barred from recovery as a matter of law" because "no duty whatsoever is owed to the plaintiff." *Gallagher v. Cleveland Browns*, 74 Ohio St.3d 427, 431, 659 N.E.2d 1232 (1996). In fact, "[b]ecause primary assumption of risk, when applicable, prevents a plaintiff from establishing the duty element of a negligence case and so entitles a defendant to judgment as a matter of law, it is an issue especially amenable to resolution pursuant to a motion for summary judgment." *Id.* at 433. In the context of sporting activities specifically, the Supreme Court of Ohio has held, "individuals engaging in recreational or sports activities assume the ordinary risks of the activity and cannot recover for injury unless the other participant's actions were either 'intentional' or 'reckless.'" *Anderson v. City of Massillon*, 134 Ohio St.3d 380, 2012-Ohio-5711, 983 N.E.2d 266, ¶ 29.

To that effect, Plaintiffs also assert a claim against Defendants for gross negligence and allege Defendants engaged in willful, wanton, and reckless misconduct. (Compl. ¶¶ 41-45, ECF No. 1.) Gross negligence is defined as the "failure to exercise any or very slight care" and "has been described as a failure to exercise even that care which a careless person would use." *Thompson Elec. v. Bank One,* 37 Ohio St.3d 259, 265, 525 N.E.2d 761 (1988) (citations and internal quotation marks omitted). In fact, "gross negligence is evidenced by willful and wanton conduct . . .." *Harsh v. Lorain Cty. Speedway*, 111 Ohio App.3d 113, 118, 675 N.E.2d 885 (8th Dist.1996). *See also*

*Mohat v. Horvath*, 11th Dist. Lake No. 2013-L-009, 2013-Ohio-4290, ¶ 23; *Steward v. City of Columbus*, 10th Dist. Franklin No. 97APG12-1567, 1998 Ohio App. LEXIS 4185, *14 (Sept. 10, 1998).

Accordingly, the Supreme Court of Ohio defines willful misconduct as that which "implies an intentional deviation from a clear duty or from a definite rule of conduct, a deliberate purpose not to discharge some duty necessary to safety, or purposefully doing wrongful acts with knowledge or appreciation of the likelihood of resulting injury" while defining wanton misconduct as that which fails "to exercise any care toward those to whom a duty of care is owed in circumstances in which there is a great probability that harm will result." *Anderson v. City of Massillon*, 134 Ohio St.3d 380, 2012-Ohio-5711, 983 N.E.2d 266, ¶¶ 32-33 (citations omitted). Finally, reckless conduct "is characterized by the conscious disregard of or indifference to a known or obvious risk of harm to another that is unreasonable under the circumstances and is substantially greater than negligent conduct." *Id.* at ¶ 34 (citations omitted).

Of note, typically, requesting the dismissal of a claim pursuant to Fed. R. Civ. P. 12(b)(6) due to an affirmative defense is not appropriate as "Federal Rule of Civil Procedure 8(a) requires only that a plaintiff *state* a claim, not that a plaintiff show that he can overcome an affirmative defense." *Siefert v. Hamilton Cty.*, 951 F.3d 753, 761 (6th Cir. 2020). Although, if the complaint itself establishes the affirmative defense, a motion to dismiss may resolve the issue. *See id.* at 762 (discussing the affirmative defense of qualified immunity). *See also, Cataldo v. U.S. Steel Corp.*, 676 F.3d 542, 547 (affirming that if the face of the complaint affirmatively demonstrates a claim is time barred by the statute of limitations, another affirmative defense, a Fed. R. Civ. P. 12(b)(6) motion to dismiss is appropriate).

In reading the complaint and currently pending motions, it is clear the defense of primary assumption of the risk to Plaintiffs' negligence claim will stand in the spotlight throughout this matter. The factual allegations of the complaint provide the narrative that Defendants invited Ripepi to participate in the UK Camp, without providing him full and adequate information about the UK Camp, and subsequently failed to supervise and coach Ripepi at the UK Camp such that Ripepi was injured by another UK Camp participant. After the alleged injury, Defendants further failed to provide Ripepi will adequate medical care. Because the veracity of these allegations is assumed, Plaintiffs have provided sufficient factual allegations that plausibly plead that Defendants were negligent – in essence, that Defendants owed Plaintiffs a duty, which was breached in these various ways, and caused damages. Additionally, determining whether the defense of primary assumption of the risk applies to Plaintiffs' negligence claim is inappropriate at this stage in litigation where Plaintiff is only required to plausibly state a claim for relief rather than plead in such a way that any affirmative defense is overcome. Whether Defendants can demonstrate that Plaintiffs assumed the ordinary risks of the activities both before and during the UK Camp such that Defendants owed Plaintiffs no duty from the moment the invitation to the UK Camp was extended through the moment Ripepi opted to return to Ohio because Defendants failed to provide him medical care remains to be seen.

Furthermore, Defendants take issue with Plaintiffs' use of the words willful, wanton, and reckless and argue that simply adding these adjectives to an underlying negligence claim cannot overcome the affirmative defense of primary assumption of the risk. (Mot. to Dismiss 12-16, ECF No. 17.) However, Plaintiffs have plausibly pled that Defendants were willful, wanton, or reckless. The entirety of Plaintiffs' story at least nudges the needle to plausibly suggest that Defendants failed to exercise their duty of reasonable care with respect to Ripepi's safety in a situation where

harm is probable, and then subsequently deliberately failed to provide Ripepi medical care even while appreciating the likelihood of continued injury. Of course, the truth of Plaintiffs' accusations and the appropriate application of the defense of primary assumption of the risk to Plaintiffs' negligence and gross negligence claims will be more appropriately before this Court at later stages of litigation.

In sum, this Court finds that Plaintiffs plausibly pled Defendants were negligent. Because the complaint itself does not establish the affirmative defense of primary assumption of the risk, and there is no requirement that Plaintiffs overcome the affirmative defense of primary assumption of the risk in the complaint, this Court will address the issue of whether Defendants did not owe Plaintiffs any duty because Plaintiffs assumed the ordinary risks of the activities both before and during the UK Camp in the future. Furthermore, in construing the complaint in the light most favorable to Plaintiffs, and accepting all well-pleaded factual allegations contained in the complaint as true, this Court finds that Plaintiffs have also plausibly pled Defendants were grossly negligent such that their conduct was willful, wanton, or reckless. Accordingly, Defendants' motion to dismiss Counts I and IV of the complaint is DENIED.

### 2. *Negligent Hiring, Retention, and Supervision (Count II)*

The second count of Plaintiffs' complaint seeks to recover damages under the theory that Defendants engaged in negligent hiring, retention, and supervision. (Compl. ¶¶ 31-35, ECF No. 1.) Under Ohio law, the elements of negligent hiring or retention are: "(1) the existence of an employment relationship; (2) the employee's incompetence; (3) the employer's actual or constructive knowledge of such incompetence; (4) the employee's act or omission causing the plaintiff's injuries; and (5) the employer's negligence in hiring or retaining the employee as the proximate cause of plaintiff's injuries." *Ruta v. Breckenridge-Remy Co.*, 69 Ohio St.2d 66, 69, 430

N.E.2d 935 (1982). Plaintiffs' failure to plead facts supporting the third element of negligent hiring or retention is dispositive. In analyzing this element, this Court will assume the veracity of Plaintiffs' allegations contained in the complaint of the existence of an employment relationship between USAT, as employer, and Brown and Green, as employees, and further assume the veracity of Plaintiffs' allegations that Brown and Green were incompetent.

Although Plaintiffs generally allege in the complaint that USAT negligently retained Brown and Green "when it became known by Defendants that they were unqualified for their positions, lacked a reasonable knowledge base in risk management, concussion management, and medical response, and exhibited a history of deficient performance in the foregoing regard," Plaintiffs fail to plead any facts throughout the entirety of the complaint that support this conclusory allegation. In other words, the complaint fails to plead facts supporting a history of incompetency by either Brown or Green such that USAT knew or should have known they were incompetent taekwondo coaches. The complaint only discusses the activities of Brown and Green as it relates to Plaintiffs' personal experiences with Brown and Green immediately before the UK Camp, during Ripepi's participation in the UK Camp, and immediately after Ripepi's alleged injury suffered at the UK Camp. The recitation of this element of negligent hiring or retention alongside the conclusory allegation that USAT knew Brown and Green were "unqualified for their positions" does not rise to the necessary pleading standard that Plaintiffs must provide well-pled factual allegations. Therefore, Plaintiffs have not plausibly pled that USAT knew Brown and Green were incompetent such that the negligent hiring, retention, and supervision claim can survive. Defendants' motion to dismiss Count II of Plaintiffs' complaint for failure to state a claim is hereby GRANTED.

    3. *Loss of Consortium (Count VI)*

The sixth count of Plaintiffs' complaint seeks to recover damages under the theory of loss of consortium. (Compl. ¶¶ 52-55, ECF No. 1.) Loss of consortium, under Ohio law, is a "separate and distinct cause of action . . . ." *Bowen v. Kil-Kare, Inc.*, 63 Ohio St.3d 84, 92, 585 N.E.2d 384 (1992). Despite this classification, "a claim for loss of consortium is derivative in that the claim is dependent upon the defendant's having committed a legally cognizable tort . . . ." *Id.* at 93. Because Plaintiffs plausibly pled Defendants were negligent or grossly negligent, they may continue to pursue the loss of consortium claim derived from these tort claims. Defendants' motion to dismiss Count VI of Plaintiffs' complaint for failure to state a claim is hereby DENIED.

   4.   *Reckless and Intentional Infliction of Emotional Distress (Count III); Federal Rule of Evidence 404(b) (Count V)*

Defendants also moved to dismiss Count III of Plaintiffs' complaint – a claim for reckless and intentional infliction of emotional distress – and Count V of Plaintiffs' complaint – a claim for "Federal Rule of Evidence 404(b)." (Mot. to Dismiss 16-17, ECF No. 17.) Plaintiffs neither generally opposed nor specifically argued against Defendants' motion to dismiss these claims in their opposition to Defendants' motion to dismiss. (*See generally* Opp'n to Mot. to Dismiss, ECF No. 25.) Accordingly, these claims are considered abandoned and Defendants' motion to dismiss Count III and Count V of Plaintiffs' complaint for failure to state claims is GRANTED. *See Humphrey v. U. S. AG Office*, 279 F. App'x 328, 331 (6th Cir. 2008) (explaining that where Plaintiffs have "not raised arguments in the district court by virtue of [their] failure to oppose defendants' motions to dismiss, the arguments have been waived"). *See also Scott v. Tenn.*, No. 88-6095, 1989 U.S. App. LEXIS 9653, at *4 (July 3, 1989) ("[I]f a plaintiff fails to respond or to otherwise oppose a defendant's motion, then the district court may deem the plaintiff to have waived opposition to the motion").

**IV.   CONCLUSION**

For the foregoing reasons, Defendants' pending motion to dismiss is hereby GRANTED IN PART AND DENIED IN PART. First, and foremost, this Court finds that it does possess personal jurisdiction over Defendants. Therefore, Defendants' motion to dismiss Plaintiffs' complaint for lack of personal jurisdiction, pursuant to Federal Rule of Civil Procedure 12(b)(2) is denied.

With respect to Defendants' motion to dismiss Plaintiffs' complaint for failure to state claims for which relief may be granted, this Court finds that Plaintiffs did fail to state claims for which relief may be granted as to Count II, negligent hiring, retention, and supervision, Count III, reckless and intentional infliction of emotional distress, and Count V, "federal rule of evidence 404(b)." On the other hand, Plaintiffs' complaint properly pled claims for which relief may be granted as to Count I, negligence, Count IV, gross negligence, recklessness, willful and wanton conduct, and Count VI, loss of consortium. Therefore, Defendants' motion to dismiss Plaintiffs' complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) is granted in part and denied in part.

The claims proceeding in this Court are as follows: (1) Plaintiffs' collective claim of negligence as to each Defendant jointly and severally; (2) Plaintiffs' collective claim of gross negligence, recklessness, willful and wanton conduct as to each Defendant jointly and severally; and (3) Ryan's and Karen's individual claims of loss of consortium as to each Defendant jointly and severally. Finally, Defendants did not move to dismiss Count VII of Plaintiffs' complaint asserting USAT is vicariously liable "for the tortious conduct of all other Defendants." As such, this claim will also proceed before this Court.

IT IS SO ORDERED.

DATE: September 29, 2021            */s/ John R. Adams*
                                   Judge John R. Adams
                                   UNITED STATES DISTRICT COURT